RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 7/27/11

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| ROBERT LEE SAMUEL,<br>    Petitioner | CIVIL ACTION<br>SECTION "P"<br>1:11-CV-00105 |
| VERSUS | |
| WARDEN, ALLEN CORRECTIONAL<br>CENTER,<br>    Respondent | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

### REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the court is a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 by pro se petitioner Robert Lee Samuel ("Samuel") on January 11, 2011. Samuel is contesting the validity of his 2007 conviction and sentence, by a jury in the Louisiana 9th Judicial District Court in Rapides Parish, on one count of possession with intent to distribute promethazine with codeine and one count of possession of hydrocodone, for which he was sentenced as an habitual (third felony) offender to a total of ten years imprisonment. Samuel is presently confined in the Allen Correctional Center in Kinder, Louisiana.

Samuel raises the following grounds for relief in his habeas petition:

    1. Was the bill of indictment valid under the circumstances?
    2. Was the state district judge's answer to Samuel's application for post-conviction relief acceptable under the standards of post-conviction relief review?
    3. Why was there no mention of the claims raised in

Samuel's post-conviction relief application and no mention of the reasoning behind the rulings on the claims, just a denial as frivolous?

4. Why did counsel and the court fail to make a more thorough examination into the statement given to the police by the defendant's daughter, where the circumstances indicate his daughter was coerced?

Samuel alleges exhaustion of his state court remedies, which the Respondent contests. Samuel's habeas petition is now before the court for disposition.

## Facts

The facts of this case, as set forth by the Louisiana Third Circuit Court of Appeal at State v. Samuel, 2008-100 (La. App. 3d Cir. 5/28/08), 984 So.2d 256, writ den., 2008-K-1419, 2008-KO-1487 (La. 2009), 1 So.3d 493, 495, are as follows:

> "The following facts were adduced from the record in this case. Shortly before August 11, 2006, the United States Postal Service (USPS) in Los Angeles, California, intercepted a suspicious package addressed to a Janice McGee at 101 Hope Street, Alexandria, Louisiana. The package was burst on one end, and illegal narcotics were identified. Thereafter, the USPS set up a controlled delivery in conjunction with the New Orleans USPS Office and the Louisiana State Police Narcotics Bureau wherein the package was to be delivered to the Hope Street address in Alexandria.
>
> "On August 11, 2006, the USPS and the Louisiana State Police conducted the controlled delivery at 101 Hope Street, Alexandria, Louisiana. During the controlled delivery, the USPS Inspector delivered the package to a young black female who was later identified as Donesha Hayes (the Defendant's 15-year-old step-daughter), who signed for the package using the name Janice Mintz.
>
> "Prior to the delivery of the package, the Defendant told Donesha to be expecting a package and to sign for it using whatever name was on the address label. After signing for the package, and while the Defendant was in

2

his bedroom, Donesha took it to the Defendant's bedroom and placed it next to him on his bed.

"Shortly after the controlled delivery, law enforcement officers executed a search warrant at the residence. Upon execution of the search warrant, the Defendant was discovered in his bedroom, and the package was on the floor next to the bed, unopened. The package was recovered by law enforcement officers, and its contents were determined to be 15 pints of codeine and 70 hydrocodone pills. Thereafter, the Defendant was placed under arrest."

## Rule 8(a) Resolution

This court is able to resolve the merits of this habeas corpus petition without the necessity of an evidentiary hearing because there is no genuine issue of material fact that is relevant to the petitioner's claims, and the State court records provide the required and adequate factual basis necessary to the resolution of the habeas corpus petition. Moya v. Estelle, 696 F.2d 329, 332-33 (5th Cir. 1983); Easter v. Estelle, 609 F.2d 756, 761 (5th Cir. 1980); Habeas Corpus Rule 8(a).

## Standard of Review

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall be considered only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a).

Under 28 U.S.C. § 2254 and AEDPA, which is applicable to habeas petitions filed after its effective date on April 24, 1996, habeas relief is not available to a state prisoner with respect to

a claim that was adjudicated on the merits in the State court proceedings unless the adjudication of the claim (1) resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an *unreasonable determination* of the facts in light of the evidence presented in the State Court proceeding. Therefore, pure questions of law and mixed questions of law and fact are reviewed under Section 2254 (d)(1), and questions of fact are reviewed under Section 2254(d)(2). <u>Martin v. Cain</u>, 246 F.3d 471, 475-76 (5th Cir. 2001), cert. den., 534 U.S. 885, 122 S.Ct. 194 (2001), and cases cited therein.

A state court decision is "contrary to" clearly established Supreme Court precedent if the state court applies a rule that contradicts the governing law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from Supreme Court precedent. A state court decision falls within the "unreasonable application" clause when it unreasonably applies Supreme Court precedent to the facts. <u>Martin</u>, 246 F.3d at 476, and cases cited therein.

<u>Law and Analysis</u>

The only issues actually argued by Samuel in his petition are the issues of whether he was entrapped and whether he had

4

ineffective assistance of counsel. The Respondent claims Samuel has failed to exhaust any of his habeas claims.

Petitioners seeking habeas relief under Section 2254 are required to exhaust *all* claims in state court prior to requesting federal collateral relief. The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the *highest* state court. A claim is not exhausted unless the habeas petitioner provides the highest state court with a fair opportunity to pass upon the claim, which in turn requires that the applicant present his claims before the state courts in a procedurally proper manner according to the rules of the state courts. <u>Mercadel v. Cain</u>, 179 F.3d 271, 275 (5th Cir. 1999). The procedural default doctrine, like the abuse of writ doctrine, refers to a complex and evolving body of equitable principles informed and controlled by historical usage, statutory developments, and judicial decisions. A corollary to the habeas statute's exhaustion requirement, the doctrine has its roots in the general principle that federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds. <u>Dretke v. Haley</u>, 541 U.S. 386, 392-393, 124 S.Ct. 1847, 1851-1852 (2004), and cases cited therein.

The exhaustion of state remedies doctrine, codified in the federal habeas statute, 28 U.S.C. §2254, reflects a policy of federal-state comity. <u>Stewart v. Martinez-Villareal</u>, 523 U.S. 637,

118 S.Ct. 1618, 1621-22 (1998), citing <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971). A federal habeas corpus petitioner must have provided all state courts that could review the matter with a fair opportunity to review the substance of all of his federal habeas claims before a federal court will review the claims. The mere fact that a federal petitioners' case has been through the state courts is not enough. A federal petitioner must have presented the state courts with the same claims he urges upon the federal courts. <u>Coleman v. Thompson</u>, 501 U.S. 722, 111 S.Ct. 2546, 2554, 115 L.Ed.2d 640 (1991); <u>Anderson v. Harless</u>, 459 U.S. 4, 6, 103 S.Ct. 276, 277 (1982); <u>Picard</u>, 404 U.S. at 275-276, 92 S.Ct. at 512.; <u>Mercadel v. Cain</u>, 179 F.3d 271, 275 (5th Cir. 1999).

Although claims are considered to be "technically" exhausted when state relief is no longer available, without regard to whether the claims were actually exhausted by presentation to the state courts, if a petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would find the claims procedurally barred, then the claim is procedurally defaulted. <u>Jones v. Jones</u>, 163 F.3d 285, 296 (5th Cir. 1998), cert. den., 120 S.Ct. 224 (U.S. 1999). The reason for this is when federal habeas claims are technically exhausted because, and only because, the petitioner allowed his state law remedies to lapse without presenting his claims to the state courts, there is no

substantial difference between non-exhaustion and procedural default. Jones, 163 F.3d at 296.

Under a procedural bar, federal habeas review is barred in all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, unless the prisoner can demonstrate cause for the default (something external to the petitioner) and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claims will result in a fundamental miscarriage of justice. Lott v. Hargett, 80 F.3d 161, 164 (5th Cir. 1996). Also, Coleman v. Thompson, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); U.S. v. Flores, 981 F.2d 231, 235-36 (5th Cir. 1993)(the petitioner must make a colorable showing of actual innocence).

## Ground 1

The Respondent contends Samuel failed to exhaust his claim that his indictment (or bill of information) "was not valid under the circumstances." However, it appears the validity of Samuel's bill of information was reviewed on direct appeal in the errors patent review (Doc. 10-2, p. 167) and was raised in his application for post-conviction relief (Doc. 10-2, Tr. p. 167). Whether or not one of the issues reviewed by the state courts is the same issue Samuel intended to raise in his habeas petition is not clear because Samuel did not provide any argument on this issue in his

habeas petition. Samuel fails to explain in his brief why he believes his bill of information was not valid. Therefore, this ground for relief is deemed abandoned. See <u>Posters 'N' Things, Ltd. v. U.S.</u>, 511 U.S. 513, 527, 114 S.Ct. 1747 (1994).

### Grounds 2 & 3

Although Samuel complains the state district judge failed to discuss the claims and reasoning in denying Samuel's application for post-conviction relief, it is clear those claims are not exhausted, as argued by the Respondent (Doc. 10-2, p. 167; Doc. 10-3, pp. 205, 220). Since Samuel has not shown cause or prejudice for failing to exhaust this claim in the state courts, he is procedurally barred from raising this claim for habeas relief.

In any event, since a federal court reviewing a federal habeas corpus application is without jurisdiction to review the constitutionality of a petitioner's state post-conviction proceedings, this claim is meritless. See <u>Kinsel v. Cain</u>, No. No. 10-30443 (5th Cir. 7/19/2011), citing <u>Trevino v. Johnson</u>, 168 F.3d 173, 180 (5th Cir. 1999).

### Ground 4

Finally, Samuel complains his counsel and his trial judge failed to make a thorough examination into the statement given to the police by the defendant's daughter, where the circumstances indicate his daughter was coerced. Essentially, Samuel is contending he was entrapped by the police and he had ineffective

8

assistance of counsel due to his attorney's failure to file a motion to suppress. This claim was exhausted by Samuel in his application for post-conviction relief in the state courts (Doc. 10-2, Tr. p. 167).

The Respondent argues Samuel failed to exhaust this claim in the state courts. However, Samuel raised the issue in his application for post-conviction relief, so the issue is properly before this court.

The critical determination in an entrapment defense is whether criminal intent originated with the defendant or with government agents. Entrapment occurs when the government causes an offense to be committed by a person other than one ready to commit it. The government may not implant in an innocent person's mind the disposition to commit a criminal act, and then induce commission of the crime so that the Government may prosecute. U.S. v. Theagene, 565 F.3d 911, 918 (5th Cir. 2009), and cases cited therein.

Entrapment operates through a burden shifting regime. The defendant must first "make out a prima facie case that the government's conduct created a substantial risk" of entrapment. This requires the defendant to make a prima facie showing of (1) his lack of predisposition to commit the offense and (2) some governmental involvement and inducement more substantial than simply providing an opportunity or facilities to commit the offense. He can do so by identification or production of evidence.

The measure of sufficiency for the prima facie showing is whether the evidence of both inducement and lack of predisposition, considered together, is sufficient to permit a reasonable jury to find entrapment. Theagene, 565 F.3d at 918-919, and cases cited therein.

Predisposition focuses on whether the defendant was an "unwary innocent" or, instead, an "unwary criminal" who readily availed himself of the opportunity to perpetrate the crime. Specifically, the question is whether the defendant intended, was predisposed, or was willing to commit the offense before first being approached by government agents." Theagene, 565 F.3d at 918, and cases cited therein.

In the case at bar, Christopher Stifflemire, a federal agent with the U.S. Postal Inspection Service testified that he was alerted that an express mail package from Los Angeles, California had been found in the mail that was torn open on one end and illegal narcotics could be seen inside the package (Doc. 10-4, Tr. pp. 360-361). Agent Stifflemire testified the Postal Inspection Service routinely received packages like that from around the United States, and would make a "controlled delivery" in an attempt to arrest the person who ordered the narcotics (Doc. 10-4, Tr. p. 361).

Agent Stifflemire testified that the partially open package, which was destined for Alexandria, Louisiana, visibly contained

10

three bottles, one labeled "promethazine with Codeine cough syrup," which is commonly traded illegally on the black market (Doc. 10-4, Tr. pp. 361, 365). When the package was fully opened later, after Samuel was arrested, it was also found to contain a bottle with seventy Hydrocodone pills (Doc. 10-4, Tr. p. 366). The address label on the package, which was filled out by whomever placed it in the mail in Los Angeles, California (it was not filled out by law enforcement officer) stated it was being sent to Janice McGee ((Doc. 10-4, Tr. pp. 372-373).

Agent Stifflemire testified that he dressed in a U.S. Postal Service uniform and used an official mail truck to take the package to the addressee residence (Doc. 10-4, Tr. p. 367); when he arrived, he asked if Janice McGee lived there, since her name was on the package, and Samuell's 16-year-old step-daughter, Donesha Hayes, told him that was she and signed for the package (Doc. 10-4, Tr. pp. 368-369).

Donesha Hayes testified that she was 16 years old, and Samuel is her stepfather (Doc. 10-4, Tr. pp. 337-339). Donesha Hayes testified that Samuel had told her a package was supposed to arrive, and that she was to sign whatever name was on the package (Doc. 10-4, Tr. pp. 345-346). Donesha testified that, when the postman arrived and asked for Janiece Mintz, she said that she was Janiece Mintz (Doc. 10-4, Tr. p. 347), then said she did not know the name on the package and asked the postman what name she should

11

sign on the receipt. Donesha testified the postman told her to sign the name on the receipt, and she signed "Janiece Mintz" (Doc. 10-4, Tr. pp. 347-348, 353). Donesha then took the package into the house, put it on Samuel's bed, and left the room (Doc. 10-4, Tr. p. 348). Donesha testified that police entered the house a few minutes later, and arrested Samuel (Doc. 10-4, Tr. pp. 349-350).

The facts that the package was addressed to Samuel's residence, and Samuel had told Donesha Hayes he was expecting a package and asked her to sign for it, indicate that the government did not induce Samuel to have illegal drugs mailed to him from Los Angeles, California. The drugs had already been mailed to Samuel before the government became involved, and the government merely stepped in at the final stage of the package delivery, which was accepted pursuant to Samuel's instructions to his step-daughter. In spite of the confusion caused by the multiple names Donesha Hayes was apparently using, there is no evidence whatsoever that Donesha Hayes was coerced into signing for the package; instead, she testified that Samuel had asked to her sign for the package when it arrived and it is evident that she was willing to do so. These facts indicate Samuel's predisposition to commit the offenses and that he was not induced by government agents to commit them.

Therefore, Samuel has not carried his burden of proving he was entrapped by the government into committing the offenses on which he was convicted, or that his counsel was ineffective in this

respect. Compare, U.S. v. Costales, 5 F.3d 480, 483 & 487 (11th Cir. 1992). This ground for habeas relief is meritless.

## Conclusion

Based on the foregoing discussion, IT IS RECOMMENDED that Samuel's habeas petition be DENIED AND DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 2(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Pursuant to Rule 11(a) of the Rules Governing Section 2254 cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order

adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. § 2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

THUS DONE AND SIGNED in Alexandria, Louisiana on the 27th day of July 2011.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE